IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Johnny Ray Gambrell, #213682,  )  Civil Action No.:2:13-2911-JMC-WWD
             )
      Petitioner, )
             )  **REPORT AND RECOMMENDATION**
    v.       )  **OF MAGISTRATE JUDGE**
             )
Warden of Broad River Correctional )
Institution,         )
             )
      Respondent. )

   The Petitioner, a state prisoner proceeding pro se, seeks habeas relief pursuant to

28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary

Judgment (Dkt. No. 26; see also Dkt. No. 27.)

   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant

petition for relief and submit findings and recommendations to the District Court.

   The Petitioner brought this habeas action on or about October 22, 2013, and filed an

amendment on or about December 10, 2013. (See Dkt. No. 1; Dkt. No. 9.) On May 16,

2014, Respondent filed a Motion for Summary Judgment. (Dkt. No. 26; see also Dkt. No.

27.) By order filed May 19, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975), the Petitioner was advised of the summary judgment procedure and the possible

consequences if he failed to adequately respond to the motion. (Dkt. No. 28.) Petitioner filed

his Response in Opposition to the Motion for Summary Judgment on or about June 23,

2014. (Dkt. No. 32.)

## PROCEDURAL HISTORY

   The Petitioner is currently confined at Broad River Correctional Institution of the

South Carolina Department of Corrections. In November of 2004, the Anderson County

Grand Jury indicted Petitioner for murder. (R. at 312-13.) Petitioner was represented at trial

by Robert A. Gamble, Esquire. (See R. at 1.)[1] Petitioner proceeded to a trial by jury before the Honorable J.C. Nicholson, Jr., on February 6-7 of 2006. (See R. at 1-379.) The jury convicted Petitioner as charged, and Judge Nicholson sentenced Petitioner to life in prison. (R. at 371-77.)

Petitioner appealed and was represented by Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense. (Dkt. No. 27-7.) In his Final Brief of Appellant, Petitioner raised the following issues:

> 1. Whether the court erred by refusing to direct a verdict where the state did not present any substantial circumstantial evidence appellant murdered his wife since the state's evidence was that female bone fragment[s] were found in appellant's backyard with DNA consistent with the decedent, and that appellant at sometime had a bonfire in his backyard in the country which the state surmised was when the decedent's body was burned since this constituted suspicion of guilt but not substantial circumstantial evidence of appellant's guilt?
>
> 2. Whether the court erred by refusing to declare a mistrial where Detective James Stewart testified, in a non-responsive answer, that he interviewed appellant on August 20, 2004, and appellant told him - inside the Anderson County Detention Center - that he had not seen his wife in three months since this testimony clearly informed the jurors that appellant was incarcerated, and the prejudice from that testimony could not be cured by a curative instruction?

(Dkt. No. 27-7 at 4 of 29.)

In an unpublished opinion filed on January 22, 2008, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence. See State v. Gambrell, No. 2008-UP-063, 2008 WL 9832878 (S.C. Ct. App. Jan. 22, 2008). Petitioner filed a pro se Motion for Rehearing; the South Carolina Court of Appeals denied that motion in an order dated April 18, 2008. (See Dkt. No. 27-9; Dkt. No. 27-10.) The Court of Appeals issued the remittitur on May 23, 2008. (Dkt. No. 27-11.)

---

[1]It appears Petitioner was tried twice on the murder charge. His first trial, at which he was also represented by Mr. Gamble, resulted in a hung jury. (See R. at 480.)

2

Petitioner filed an application for post-conviction relief ("PCR") on November 24, 2008. (See Dkt. No. 27-5 at 36-42 of 154.) The following question and answer appeared on that application:

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully.
>
> (a) ineffective assistance of counsel
>
> (b) subject matter jurisdiction
>
> (c) prosecutorial misconduct

(R. at 382.) On November 18, 2009, Petitioner, through Attorney Hugh W. Welborn, filed an amended application for post-conviction relief, wherein Petitioner added the following ground:

> Ineffective assistance of counsel, after arrest in 2004, the Public Defender's lead investigator was Jimmy Penn. He met with me on a couple of occasions. He was in possession of my file through the Public Defender's Office. In 2005, a mistrial was declared. When Applicant was re-tried in 2006, Mr. Penn was then working as an investigator for the Solicitor's Office.

(R. at 397.)

On June 15, 2010, an evidentiary hearing was held before the Honorable R. Lawton McIntosh. (See R. at 409-76.) Petitioner was present and represented by Hugh Welborn, Esquire. (See R. at 409.) In an order dated November 10, 2010, Judge McIntosh denied the application for post-conviction relief and dismissed the petition. (R. at 477-88.)

Petitioner, through his attorney Robert M. Dudek of the South Carolina Commission on Indigent Defense, filed a Petition for Writ of Certiorari on August 11, 2011. (Dkt. No. 27-12.) In that petition, Mr. Gambrell raised the following issue:

> Whether the PCR court erred by ruling petitioner was not ineffectively represented where the solicitor repeatedly, without objection, called petitioner a liar during her closing argument, where petitioner did not testify, offer any evidence in his defense, and did not put his character at issue since counsel

3

could not have had a valid strategic decision for allowing such an improper highly prejudicial argument to proceed without objection?

(Dkt. No. 27-12 at 3 of 22.) On July 24, 2013, the South Carolina Court of Appeals denied the petition. (Dkt. No. 27-14.) The South Carolina Court of Appeals remitted the matter to the lower court on August 9, 2013. (Dkt. No. 27-15.)

Petitioner then filed the instant habeas petition. (Dkt. No. 1.) In his Amended Petition, Mr. Gambrell raises the following grounds for review (verbatim):

**GROUND ONE**: State failed to grant a direct verdict.

**Supporting facts:** State did not present any substantial circumstantial evidence appellant murdered his wife. The State's evidence constituted suspicion of guilt but not substantial circumstantial evidence of appellant's guilt.

**GROUND TWO**: State failed to grant a mistrial.

**Supporting facts:** The court erred by refusing to declare a mistrial where Detective Stewart testified he discussed the disappearance of Appellant's wife with him in the Anderson County Jail. This evidence appellant was in jail on a previous occasion was highly prejudicial. He erred by refusing to declare a mistrial.

**GROUND THREE**: Ineffective assistance of counsel for failing to object to the solicitor's prejudicial comment during closing argument.

**Supporting facts:** The solicitor called petitioner a liar, where petitioner did not testify, offer any evidence in his defense and did not put his character at issue because trial counsel could not have had a valid strategic argument to proceed without objection. Solicitor called petitioner a liar 8 times during closing argument.

**GROUND FOUR**: The State failed to prove a malice murder was committed by Applicant. No assault no cause of death.

**Supporting facts:** When reviewed with the solicitor's opening arguments and final summation the court's malice charge is inherently prejudicial resulting in the denial of a fair trial. The State prove no assault the State said she died from unknown means. They did not prove how she died when she died or who killed her.

4

**GROUND FIVE**: Ineffective assistance of counsel[;] counsel failed to object to court's reasonable doubt charge.

**Supporting facts:** Solicitor wanted to changed part of the reasonable doubt charge and counsel did not object to the charge. And the charge stood. SHE wanted to leave off what she wanted to. That's not a fair trial. Counsel did nothing.

**GROUND SIX**: Ineffective assistance of counsel[;] counsel failed to object to trial court's circumstantial evidence charge.

**Supporting facts:** The solicitor wanted to leave out the last two paragraphs in the charge and counsel did not object or even make an attempt to stop it. So the court changed the charge without object to. And the court left the two paragraphs out.

**GROUND SEVEN**: Ineffective assistance of counsel[;] counsel failed to object to trial court's malice charge.

**Supporting facts:** Due to the facts presented by the State's own evidence it is crystal that the State failed to prove malice murder in this case. The facts presented in this case make that very point extremely clear to anyone of prudent judgment. Nowhere in the trial of this case could the State prove the mens re[a] criminal intent of the (Applicant's mind) for the necessary elements of malice aforethought.

**GROUND EIGHT**: Ineffective assistance of counsel[;] counsel failed to argue third party guilt.

**Supporting facts:** The first trial in this case ended in a hung jury. Third party guilt was the main factor for a hung jury and mistrial. However the solicitor did not want this to happen in this trial. She objected to the defense pursuing any questions on third party guilt. Obviously counsel was persuaded by the solicitor's objection because he didn't even put up any argument against the objection, although this was a big part of the defense in the first trial that ended in a hung jury, and mistrial. There was no legal reasons or strategy as to why he should not have pursued this defense.

**GROUND NINE**: Counsel failed to argue time a place of death.

**Supporting facts:** The date of death was unknown State said because she had not been seen since July 14, 2004 time was between July 14-16-2004 that was not proven place of death was not proven cause of death was unknown. Very important point here coroner on record page 327. In this particular case we ruled that the death was based on the remains found that there was traumatic injury and the remains were found burned. How could

they prove traumatic injury with 13 oz of bones p. 329 Dr. Rathbun testified that he saw no culling, no shot marks no knife marks and was unable to determine cause of death. And no way to tell time of death. No a slat was proven nothing was proven all guess work no proof. . . .

**GROUND TEN**: Ineffective assistance of counsel[;] counsel failed to move for a change of venue.

**Supporting facts:** The Anderson Da[ily] Mail ran ads in the Anderson paper about the facts of the case. Like 6 different times the Williamston ran ads 3 different times Benton ran ads also just blowing the case up like every few days and the TV started station ran ads blowing the case up. The radio ran ads all so day after day they are no way I could get a fair trial in Anderson S.C. And counsel did not even ask for a change of venue. But here is really why I should got a change of venue my inv. for the public defender's office was Jimmy Penn. He came out and talk to me took notes about the case. We talk a few different times this is in 2004-2005 well I go to late Nov-2005 mistrial hung jury. Back to trial in Feb-2006. Same att Robert Gambrell now my old inv. Mr. Jimmy Penn is working as a investigator for the solicitor office. Don't they love it made my old inv-now he their inv any judge with any common sense would no even heard this case if I got a fair trial it snows in summertime. I did not have a chance I should have had a change of venue. To all of the untrue statements that was run on the TV, radio, newspapers, and the inv working both sides Hello I need so here thanks.

**GROUND ELEVEN**: Counsel failed to strike two selected jurors for cause.

**Supporting facts:** We had two jurors that should have been excuse for cause. Juror 20 Pamela Burdette who knew to much about my case to not even know me. She stated that drugs will make us do things we would not normally do. Then before that was did you know either party answer no I do not. Could you be fair to both parties I think I can. That's not a yes or no answer I think I can. Nothing for sure I think I can. I believe I can. The other juror new [sic] too much about my case should have been removed for cause.

**GROUND TWELVE**: Counsel failed to move for a independent D.N.A. expert.

**Supporting facts:** Common sense my counsel did not even try to get a D.N.A. expert. So we really don't know what the D.N.A. was we did not have an expert to test it. An the bone could have been chicken bones or deer bones that we all know they found a deer bone that said was a right deer front leg. My counsel said at P.C.R. the state had a expert to do the testing so I feel good about that's ineffective assistance of counsel he left me out to dry with no D.N.A. expert. My att said he did not do it for trial tactics. How could that be a valid strategy when if he had a D.N.A. expert to do the testing what if it come back not a match I would not be lock up now. Poor excuse for att. . . .

6

**GROUND THIRTEEN**: Conflict of interest.

**Supporting facts:** This issue was amended to the state court. Counsel was ineffective for allowing my case to go to court here without even trying to stop it. And let the judge make that decision that's what we have judges for I thought but my lawyer thought he was the judge. I had two trials first trial hung jury. My inv. Mr. Jimmy Penn was my inv on my case 2004-2005 go to court hung jury. Go back to court 2006 Feb . . . now that same Jimmy Penn my inv on this same case in 2004-2005 is now working for solicitor's office as their inv. I did not have a chance, my atty said he new [sic] Jimmy he was a good o boy. If that's not a conflict I don't know what is.

(Dkt. No. 9.)

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

### Habeas Standard of Review

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v.

Pruett, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant

habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000).  "[A] federal habeas

court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams,

529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v.

Alvarado, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (See Dkt.

No. 26; see also Dkt. No. 27.) For the reasons set forth herein, the undersigned

recommends that Respondent's Motion for Summary Judgment (Dkt. No. 26) be granted.

**I. Ground One**

In Ground One, Petitioner contends the trial court erred in failing to grant a directed

verdict; he asserts the "State's evidence constituted suspicion of guilt but not substantial

circumstantial evidence of [Petitioner's] guilt." (Dkt. No. 9.)

The undersigned recommends granting summary judgment to Respondent on

Ground One. Petitioner essentially contends that there was not enough evidence to convict

him of murder. Although claims of insufficient evidence are cognizable on collateral review,

8

"a federal court's review of such claims is 'sharply limited.'" Wilson v. Greene, 155 F.3d 396,

405 (4th Cir. 1998) (quoting Wright v. West, 505 U.S. 277, 296 (1992)). As the Fourth Circuit

stated in Williams v. Ozmint, 494 F.3d 478 (4th Cir. 2007),

> "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a [state] criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quotation marks and citation omitted). "To determine whether this due process right has been violated, the appropriate inquiry before the passage of AEDPA was a straightforward question of 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Sarausad v. Porter, 479 F.3d 671, 677 (9th Cir.2007) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original)). Now, under the AEDPA provision codified at 28 U.S.C. § 2254(d)(1), "we inquire whether a state court determination that the evidence was sufficient to support a conviction was an 'objectively unreasonable' application of [the standard enunciated in] Jackson." Id.

Williams, 494 F.3d at 489.

The South Carolina Court of Appeals considered Petitioner's argument that the trial

court erred in denying his motion for a directed verdict in State v. Gambrell, No. 2008-UP-

063, 2008 WL 9832878 (S.C. Ct. App. Jan. 22, 2008). In addressing this claim, the South

Carolina Court of Appeals stated,

> When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. State v. Gaster, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002). This court must review the denial of a directed verdict by reviewing the evidence and all reasonable inferences in the light most favorable to the State. State v. Burdette, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999). This court must affirm the denial of an accused's motion for a direct verdict if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused. State v. Harris, 351 S.C. 643, 653, 572 S.E.2d 267, 273 (2002). The standard of review is the same where the State relies exclusively on circumstantial evidence. State v. Cherry, 361 S.C. 588, 593-94, 606 S.E.2d 475, 477-78 (2004).
>
> In this case, the State presented substantial circumstantial evidence of Gambrell's guilt. Murder is defined as the "killing of any person with malice aforethought, either express or implied." S.C. CODE ANN. § 16-3-10 (2003).

9

There are numerous facts supporting the trial court's denial of the motion for a directed verdict.

Gambrell and Lois had a stormy relationship and Gambrell physically harmed Lois on prior occasions. Garner and other witnesses observed Lois at the marital home within a day or two of the bonfire. Gambrell made conflicting statements as to the last time he had seen Lois. Witnesses observed Gambrell at or near the bonfire at various times as it burned. Bones found in the bonfire debris were identified as belonging to an offspring of Lois's mother. See State v. Al-Amin, 353 S.C. 405, 411-13, 578 S.E.2d 32, 34-36 (Ct. App. 2003) (Concealment or attempted destruction of the body of a murdered person is a probative fact tending to show guilt.). Other items belonging to Lois were found near the burn site. Lois's vehicle was mysteriously returned to the car dealership near the time the investigation into Lois's disappearance began. Taken together, these facts constitute substantial circumstantial evidence presented by the State to warrant submission of the case to the jury. The motion for a directed verdict was properly denied.

Gambrell, 2008 WL 9832878, at *2.

As the South Carolina Court of Appeals noted, "'[m]urder' is the killing of any person with malice aforethought, either express or implied." S.C. CODE ANN. § 16-3-10. "'Malice' is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong." State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998) (citation omitted). The indictment in this case charges as follows:

THAT JOHNNY RAY GAMBRELL DID IN ANDERSON COUNTY, SOUTH CAROLINA, ON OR BETWEEN JULY 14 AND 16, 2004, FELONIOUSLY, WILFULLY AND WITH MALICE AFORETHOUGHT, KILL ONE LOIS BRIDGES BY UNKNOWN MEANS.

(R. at 313.)

Contrary to Petitioner's assertions, the state court's determination that the evidence was sufficient to support a conviction of murder was not an objectively unreasonable application of the standard enunciated in Jackson. At trial, the State presented evidence that Petitioner had previously physically harmed Lois, the Decedent. (R. at 75-76.) The State also presented evidence that the Decedent was last seen on July 13, 2014, and that

10

Petitioner tended a large bonfire at the Gambrells' residence on the night of July 16, 2014. (R. at 46-48, 58-59, 73, 82-83, 226-27.) There was testimony that Petitioner was seen throwing various items into the fire. (R. at 48, 58-59.) The State also presented evidence that Petitioner moved out of the residence the day after the bonfire. (R. at 72.) Human remains were found in the debris left by the bonfire, and DNA from those remains was identified as a female offspring of Ms. King, the Decedent's mother. (R. at 118-19, 136-39, 249.) Ms. King had four female children, and all of them—save the Decedent—were alive at the time of Petitioner's trial. (R. at 224-26.) Petitioner did not report his wife missing; the Decedent's mother reported her missing in August of 2004. (R. at 23-24, 227.) The State presented evidence that there was a blood stain on the carpet in the house the size of a pie plate; while the State's expert could not say whether the blood was human blood, he testified the stain was blood. (R. at 127-29, 246-48, 254.) Furthermore, as the South Carolina Court of Appeals noted, the State presented evidence that Petitioner and Decedent had a "stormy" relationship. Shane Garner, the Gambrells' landlord, testified as follows about the nature of the problems between Petitioner and Decedent:

> MARITAL PROBLEMS OF A DEGREE THAT HE LET ME KNOW ABOUT. HE BELIEVED THAT SHE WAS RUNNING AROUND ON HIM AND WANTED ME TO GO AND — HE BELIEVED, HE COME TO MY HOUSE ONE DAY, ME AND JOHNNY HAD A RELATIONSHIP, ME AND JOHNNY HAD A FRIENDSHIP RELATIONSHIP. HE STOPPED AT MY HOUSE OCCASIANLLY AND JUST CHATTED.
> HIS BROTHER-IN-LAW DROVE HIM TO MY HOUSE AND HE ASKED IF I WOULD GO DOWN TO HIS RESIDENCE AND SEE IF THERE WAS A BLACK MAN LIVING IN THE TRAILER WITH HIS WIFE, LOIS. HE FELT LIKE SHE WAS RUNNING AROUND WITH HIM. AND I DIDN'T WANT TO DRIVE AROUND THERE AT FIRST, BUT HE WAS REAL PERSISTENT, AND I TOLD HIM I — HE WANTED US BOTH TO GO DOWN THERE AND I SAID, "WELL, I WILL JUST GO DOWN AND THERE AND JUST SEE FOR YOU." AND I DROVE DOWN THERE AND CAME TO THE DOOR, LOIS CAME OUT. NEVER SAW NOBODY INSIDE. THERE WAS A RED SUBURBAN TRUCK PARKED OUT. AND WASN'T, DIDN'T REALLY WANT TO GET INVOLVED. BUT DIDN'T SEE NOBODY, SO WAS GOING TO GO INSIDE AND JUST ASK HER IF SHE HAD A KEY TO ANOTHER MOBILE

> HOME OF MINE. I LEFT, CALLED JOHNNY, TOLD HIM THAT I NEVER
> SAW NOBODY IN THERE; AND THAT THE TRUCK WAS STILL PARKED
> THERE. AND JOHNNY TOLD ME THAT HE WOULD TALK TO ME LATER.

(R. at 74-75.) Garner testified this occurred approximately one month before the fire. (R. at 75.) Garner further testified,

> AND AFTER THAT NIGHT JOHNNY CAME BACK DOWN TO MY HOUSE
> 3 OR 4:00 IN THE MORNING. MY WIFE IS PREGNANT WITH OUR
> SECOND CHILD AND SHE WAS SICK OCCASIONALLY. WE WAS IN THE
> HOSPITAL A LOT. AND WE — WE TRAVELED HOME AND HE WAS
> PARKED -- I LIVE IN A DEAD END, A CUL DE SAC IN MY SUBDIVISION.
> HE WAS PARKED OUT THERE AND HE CAME UP TO MY CAR AND WAS
> REAL NERVOUS AND WORRIED AND ASKED ME, TOLD ME THAT
> EVERYTHING IS GOING TO BE OKAY, THAT HIM AND LOIS HAD
> WORKED EVERYTHING OUT AND THAT EVERYTHING WAS GOING TO
> BE JUST FINE. THAT THE BLACK GUY THAT WAS THERE WAS WITH HIS
> WIFE. AND I ASKED HIM HOW HE KNEW EVERYTHING WAS OKAY. HE
> SAID THAT HE HAD SNUCK DOWN THE ROAD, COME UP TO THE
> TRAILER, CAME THROUGH THE BACK DOOR. AND HIS WORDS, HE
> "POUNCED ON HER." HE WAS REAL WORRIED BECAUSE HE SAID HE
> HAD HIT HER REPEATEDLY. HE SAID HE WOULD HAVE KILLED HER IF
> SHE HADN'T OF CONVINCED HIM — SHE CALLED APPARENTLY THIS
> WOMAN OR THE BLACK GUY AND CALLED HIM AND ASKED IF HE
> COULD, IF THE WOMAN THAT WAS THERE COULD DESCRIBE THE
> INSIDE OF HIS HOME. AND APPARENTLY SHE COULD. AT LEAST THE
> STORY HE WAS TELLING ME. AND THAT'S THE ONLY REASON HE
> STOPPED BEATING HER.

(R. at 75-76.)

Although Petitioner believes the evidence could lead to a different conclusion, Petitioner has not met the standard to show that he is entitled to federal habeas relief. See, e.g. Al-Amin v. Stevenson, Civ. A. No. 0:10-2023-CMC-PJG, 2011 WL 3439411, at *12 (D.S.C. July 12, 2011) adopted at 2011 WL 3439531 (D.S.C. Aug. 5, 2011). Respondent is entitled to summary judgment on Ground One.

**II. Ground Two**

Petitioner asserts in Ground Two that the court erred in failing to grant a mistrial "where Detective Stewart testified he discussed the disappearance of [Petitioner's] wife with

him in the Anderson County Jail"; Petitioner contends "[t]his evidence [that Petitioner] was

in jail on a previous occasion was highly prejudicial." (Dkt. No. 9.)

The following exchange occurred during the testimony of Detective Stewart:

Q. And you're indicating that Johnny Ray Gambrell spoke with you and said he hadn't seen Lois Gambrell since June?

A. The date of the actual interview, August 20th, 2004; and I understood him to say that he had not seen her three months prior to that date.

Q. You told the solicitor that was sometime in June?

A. Around, thereabout. I'm not sure of the exact dates, three months prior to that interview date. Yes, sir.

Q. Did you keep your notes from that interview?

A. No, sir I did not to my best recollection I did not actually take written notes on that day.

Q. Could it have been that he said hadn't seen her in three or four weeks or five weeks, six weeks?

A. No, sir. I am certain on that. I was walking back to the control booth at the Anderson County Detention Center.

Q. But you didn't take notes at that time? No–

A. No, sir.

(R. at 29.) After the examination of Detective Stewart had concluded, Petitioner's counsel

moved for a mistrial outside the presence of the jury. (R. at 30-31.) Counsel argued for a

mistrial, asserting the jury learning that Petitioner was at the detention center was

prejudicial. (R. at 31-33.) The trial judge stated,

. . . I don't think it rises to the level of a new trial. I'll admonish the jury when they come back to disregard anything he said. As not being responsive to your question about the notes. And don't consider anything he said.

(R. at 32-33.) Petitioner's counsel objected to such an instruction, stating,

13

> I object to that, also. To admonish the jury to disregard the fact that he mentioned the detention center. And I'm doing that as a trial tactic, your honor. Because in my opinion almost 40 years of this, when you admonish them, and say disregard the fact that he mentioned detention center, and they say–the jury suddenly hears it again.

(R. at 33.)

Petitioner did raise this issue in his direct appeal; in addressing this claim, the South Carolina Court of Appeals stated,

> Gambrell next argues the trial court erred in refusing his motion for a mistrial based on Officer Stewart's statement on cross-examination. We disagree.
> During cross-examination, defense counsel questioned Stewart about Gambrell's alleged statement that he had not seen Lois in three months. Defense counsel asked: "Could it have been that he said [he] hadn't seen her in three or four weeks ... ?" Stewart replied: "No, sir. I am certain on that. I was walking back to the control booth at the Anderson County Detention Center." The State briefly redirected and defense counsel moved for a mistrial. Defense counsel declined the trial court's offer of a curative instruction.
> We find Gambrell waived this issue by declining the curative instruction. See State v. Watts, 321 S.C. 158, 164–65, 467 S.E.2d 272, 276 (Ct.App.1996) (finding defendant waived issue by rejecting offer by trial court to give a curative instruction).

Gambrell, 2008 WL 9832878, at *3.

The undersigned recommends granting summary judgment to Respondent on Ground Two. As Respondent notes, the alleged error appears to be one of state law, not federal law; such a contention is supported by Petitioner's citation of state law in his Final Brief of Appellant. (See Dkt. No. 27-7.) However, "federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). As the Supreme Court stated in Estelle,

> [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

14

Id. at 67-68; see also 28 U.S.C. § 2254(a); Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law). To the extent Petitioner contends the failure to grant his motion for a mistrial was an error of state law, no habeas relief is warranted. See Minett v. Hendricks, 135 F. App'x 547, 553 (3d Cir. 2005) (no federal habeas relief on contention that trial court's denial of motion for mistrial violated right to fair trial under the Due Process Clause of the Fourteenth Amendment, stating, "[The petitioner] cites no Supreme Court case clearly establishing the admission of 'other crimes' evidence constitutes a violation of federal fair trial rights. To the contrary, the most relevant Supreme Court cases suggest the contrary." (citations omitted)); McNeil v. Reynolds, Civ. A. No. 9:08-2796-JFA-BM, 2009 WL 2043886, at *2, 8-10 (D.S.C. July 10, 2009) (citing Estelle in concluding federal habeas relief was not warranted on claim that trial court erred in failing to grant a mistrial based on solicitor's discussion of the petitioner's prior bad act in closing argument). In any event, Petitioner is not entitled to relief on this ground. See United States v. Smith, 487 F.3d 618, 622 (8th Cir. 2007) (noting that district court had offered to give curative instruction to jury after witness made non-responsive statement that defendant had recently been released from prison and holding that court had not erred in denying motion for mistrial); United States v. Blakey, 960 F.2d 996, 1000 (11th Cir. 1992) (district court did not abuse its discretion in refusing to grant mistrial where one of government's witnesses mentioned a co-defendant's appeal where, *inter alia*, the trial judge offered to instruct the jury to disregard the statement but defense counsel refused). The undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground Two.

## III. Ground Three

Petitioner asserts in Ground Three that counsel was ineffective in failing to object "to the solicitor's prejudicial comment during closing argument." Petitioner contends trial

counsel "could not have had a valid strategic argument to proceed without objection" where the solicitor called him a liar eight times during closing argument, and "petitioner did not testify, offer any evidence in his defense and did not put his character at issue."

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.   Id. at 689.   "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985).  In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.   A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

The PCR court noted Petitioner's testimony that counsel was ineffective "for failing to object when the Applicant was called a liar" as well as Petitioner's testimony that counsel

16

"was ineffective for failure to object to the State's opening and closing arguments." (R. at

481.) The PCR court's order notes as follows:

> [T]he Applicant argued that Counsel should have objected to the State's
> opening when the Solicitor stated that the Applicant was a "mean and feeble
> person," and that Counsel should have objected to the State's closing when
> the Solicitor made references to the murderous fate of the victim, and "called
> the Applicant a liar eight times."

(R. at 481.) The PCR court summarized trial counsel's testimony as follows:

> Counsel . . . testified that he did not object to the State's closing because as
> a general rule he did not object unless it was something particularly egregious
> in order not to draw attention to it. With specific reference to the Applicant's
> allegation that he was called a liar, Counsel testified that the solicitor was
> merely pointing out inconsistencies in the Applicant's story, which is
> something they were entitled to do . . . .

(R. at 483.) In addressing the merits of the claim, the PCR court stated,

> [T]his Court finds that the Applicant has . . . failed to meet his burden of proof.
> This Court finds that Counsel's testimony that he rarely objects during
> arguments unless something is egregious is done as a matter of trial strategy
> because he does not want to further call the jury's attention to something to
> be credible. Upon review of the transcript, this Court finds that any impropriety
> during opening and closing arguments was minimal, and as such, Counsel's
> strategy was a valid one. Our courts are understandably wary of second-
> guessing defense counsel's trial tactics. Where counsel articulates valid
> reasons for employing a certain strategy, counsel's choice of tactics will not
> be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417
> S.E.2d 530 (1992). See also Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812
> (2005) and McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here,
> Counsel articulated valid strategic reasons for his course of action. The
> Applicant has not shown that counsel was deficient in that choice of tactics.
> As such, this Court finds that the Applicant cannot show either ineffective
> assistance of counsel or resulting prejudice. Accordingly, this allegation is
> denied and dismissed.

(R. at 486-87.)

Petitioner is not entitled to relief on Ground Three. The state court's rejection of this

claim was not contrary to, or an unreasonable application of, clearly established federal law,

nor was it an unreasonable determination of the facts. As noted by the PCR court, trial

17

counsel testified that he did not object because doing so could "draw[] more attention to what was said." (R. at 468.) Petitioner is not entitled to federal habeas relief on Ground Three. See McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."); Evans v. Thompson, 881 F.2d 117, 125 (4th Cir. 1989) (no habeas relief on the petitioner's claim that counsel was ineffective in failing to object to the prosecution's assertion that he was a multiple murderer where "[d]efense counsel testified that he chose not to object to the prosecutor's argument because he felt an objection would only have emphasized the matter before the jury"); Curry v. Warden, No. 6:07-2933-HFF-WMC, 2008 WL 3887648, at *11 (D.S.C. Aug. 21, 2008) (finding the petitioner was not entitled to habeas relief on claim of ineffective assistance of counsel for failure to object to prosecutor's statement in closing argument where, *inter alia*, counsel testified as to his strategic reasons for not objecting); see also Hansford v. Angelone, 244 F. Supp. 2d 606, 613 (E.D. Va. 2002) ("Constitutionally effective assistance does not require the assertion of every possible valid objection. Indeed, it is frequently better to remain silent rather than to draw attention to the matter." (internal quotation marks and citations omitted)). The undersigned recommends granting summary judgment to Respondent on Ground Three.

## IV. Ground Four

Petitioner asserts in Ground Four that the "State failed to prove a malice murder was committed by" Petitioner. Petitioner states,

> When reviewed with the solicitor's opening arguments and final summation the court's malice charge is inherently prejudicial resulting in the denial of a fair trial. The State prove no assault the State said she died from unknown means. They did not prove how she died when she died or who killed her.

(Dkt. No. 9.)

Petitioner's contention that the trial court erred in denying his request for a directed verdict is addressed above in Ground One. Although Petitioner contended on direct appeal that the trial court erred in failing to grant his motion for a directed verdict "where the state did not present any substantial circumstantial evidence [Petitioner] murdered his wife," he did not contend the trial court erred in failing to grant his motion for a directed verdict because the state "failed to prove a malice murder." (Dkt. No. 27-7 at 4 of 29.) Because Petitioner did not present the facts and argument at issue in Ground Four to the South Carolina Court of Appeals, the claim is procedurally barred. See Matthews v. Evatt, 105 F.3d 907, 911-17 (4th Cir. 1997), abrogated on other grounds by Miller-El v. Dretke, 545 U.S. 231 (2005); see also Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004). To the extent Petitioner asserts Martinez v. Ryan, 132 S. Ct. 1309 (2012), allows him to establish cause and prejudice for the default, Petitioner is mistaken, as Ground Four was not raised on *direct* appeal. See Fowler v. Joyner, 753 F.3d 446, 463 (4th Cir. 2014) (for North Carolina ineffective assistance of counsel claim that is "apparent from the record and must be brought by the prisoner on direct appeal," "the *Martinez* exception to *Coleman* will

provide the prisoner no relief on federal habeas").[2] Respondent is entitled to summary judgment on Ground Four.

---

[2]In any event, contrary to Petitioner's assertions, there is no requirement under South Carolina law that the prosecution prove exactly how the decedent died. In State v. Saltz, 346 S.C. 114, 551 S.E.2d 240 (2001), the appellant argued the trial court erred in denying his motion for a directed verdict because "there is no evidence [that the decedent] was murdered." Saltz, 346 S.C. at 137, 551 S.E.2d at 253. The Supreme Court of South Carolina stated,

> Before a defendant in a criminal case can be required to present a defense, the State must present some proof of the corpus delicti of the crime. State v. Brown, 103 S.C. 437, 88 S.E. 21 (1916). In a murder case, the corpus delicti consists of two elements: the death of a human being, and the criminal act of another in causing that death. State v. Martin, 47 S.C. 67, 25 S.E. 113 (1896). An extrajudicial confession standing alone cannot constitute proof that a murder has taken place. The State must produce proof of the corpus delicti from a source other than the out-of-court confession of a defendant. State v. Owens, 293 S.C. 161, 359 S.E.2d 275 (1987). The corpus delicti of murder may be established by circumstantial evidence when it is the best evidence obtainable. Id. Furthermore, circumstantial evidence may be sufficient to establish the corpus delicti of murder even though the cause of death can not be determined. Brown v. State, 307 S.C. 465, 467-68, 415 S.E.2d 811, 812 (1992). In Owens, the body of the victim was never found. Nevertheless, we held circumstantial evidence of the victim's personal habits and relationships raised an inference that the victim's sudden disappearance was the result of death by a criminal act and was thus sufficient to establish the corpus delicti.
>
> The trial court ruled there was sufficient circumstantial evidence to establish the corpus delicti, including Joseph's good health, the rule in his house that he must be home by dark or call immediately, testimony the wooded area where Joseph's body was found was too thick to ride a bicycle, testimony from Joseph's best friend that they never played in that area, and testimony from an officer that it is very unusual for a twelve-year-old boy to be missing for any length of time. Appellant argues these facts are equally consistent with death by accident or sudden illness. However, when ruling on a motion for a directed verdict, the trial court is concerned with the existence or non-existence of evidence, not its weight. State v. Robinson, 310 S.C. 535, 538, 426 S.E.2d 317, 319 (1992). Furthermore, in reviewing the denial of a directed verdict motion, an appellate court must review the evidence in the light most favorable to the State. State v. Rowell, 326 S.C. 313, 487 S.E.2d 185 (1997). Considering the evidence in the light most favorable to the State, we conclude the trial court properly denied appellant's motion for a directed verdict. There is more than adequate circumstantial evidence to prove Joseph did not die a natural death.

Saltz, 346 S.C. at 137-38, 551 S.E.2d at 253.

### V. Grounds Five Through Seven

In Grounds Five, Six, and Seven, Petitioner asserts counsel was ineffective for failing to object to various portions of the jury charge. In Ground Five, Petitioner contends counsel was ineffective in failing to object to the court's reasonable doubt charge. Petitioner states,

> Solicitor wanted to changed part of the reasonable doubt charge and counsel did not object to the charge. And the charge stood. SHE wanted to leave off what she wanted to. That's not a fair trial. Counsel did nothing.

(Dkt. No. 9.) Petitioner asserts in Ground Six that counsel was ineffective in failing to object to the trial court's circumstantial evidence charge; he asserts in Ground Seven that counsel was ineffective in failing to object to the trial court's malice charge. (See id.)

Respondent asserts these grounds were "waived and abandoned" when Petitioner did not raise these issues on appeal from the denial of PCR. (Dkt. No. 27 at 65, 67, 69.) Respondent is correct that Petitioner did not raise these issues in his petition for writ of certiorari. (See Dkt. No. 27-12.) The claims are therefore procedurally barred. See Longworth, 377 F.3d at 447-48 (concluding that certain grounds are "procedurally defaulted as a result of [the petitioner's] failure to raise them in his petition for certiorari to the South Carolina Supreme Court for review of the State PCR Court's decision").

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, Bousley v. United States, 523 U.S. 614, 623 (1998); see also Schlup v. Delo, 513 U.S. 298, 327 (1995), or abandonment by counsel. Maples v. Thomas, 132 S. Ct. 912, 924 (2012). Petitioner has not made any showing sufficient to overcome the procedural bar. See

Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in *Martinez*. Instead, his claims fall under the general *Coleman* rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.").

Furthermore, the state court specifically concluded "that the jury instructions given were proper and consistent with the law in South Carolina at the time." (R. at 485.) Given the state court's conclusion that the jury instructions were correct as a matter of state law, Petitioner cannot obtain relief in the instant habeas action. See Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law); Lopez v. Thurmer, 594 F.3d 584, 587 (7th Cir. 2010) ("Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling that counsel's performance was constitutionally adequate under Strickland was reasonable. It is not well outside the boundaries of permissible differences of opinion to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place." (internal quotation marks and citations omitted)); Davis v. McCall, Civ. A. No. 4:11-cv-3263-MGL-TER, 2013 WL 1282130, at *19 (D.S.C. Feb. 1, 2013), adopted at 2013 WL 1282128 (D.S.C. Mar. 25, 2013) ("Because there was no error in the charge, trial counsel was not ineffective for failing to raise the 'correct' objection and Petitioner was not prejudiced by trial counsel's objection."); Williams v. McNeil, Civ. A. No. 3:08cv308–LC/WCS, 2010 WL 5505377, at *4 (N.D. Fla. Nov. 19, 2010), adopted at 2011 WL 30107 (N.D. Fla. Jan. 4, 2011) ("Petitioner's attorney could not have committed attorney error in failing to request a jury instruction that

was not appropriate under state law."). Respondent's Motion for Summary Judgment should be granted as to Ground Five, Ground Six, and Ground Seven.

## VI. Ground Eight

Petitioner asserts in Ground Eight that counsel was ineffective for failing to argue third-party guilt; he states,

> The first trial in this case ended in a hung jury. Third party guilt was the main factor for a hung jury and mistrial. However the solicitor did not want this to happen in this trial. She objected to the defense pursuing any questions on third party guilt. Obviously counsel was persuaded by the solicitor's objection because he didn't even put up any argument against the objection, although this was a big part of the defense in the first trial that ended in a hung jury, and mistrial. There was no legal reasons or strategy as to why he should not have pursued this defense.

(Dkt. No. 1.)

As with many of the previous claims, Petitioner did not raise the issue on appeal from the denial of post-conviction relief. Accordingly, the claim is barred. See Longworth, 377 F.3d at 447-48; see also Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in *Martinez*. Instead, his claims fall under the general *Coleman* rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.").

Regardless, Petitioner is not entitled to federal habeas relief. The PCR court addressed this claim as follows:

> [T]his Court finds that the Applicant has failed to meet his burden [of] proof. This Court finds that Counsel's testimony that his trial strategy in the second case was to attempt to prove that it was not the Applicant who committed the crime by showing the evidence did not show it was the Applicant who committed the crime beyond a reasonable doubt to be credible. Further, this Court finds that Counsel's choice of strategy was a valid and reasonable one. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid reasons for employing a certain

strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, counsel articulated valid strategic reasons for his course of action. The Applicant has not shown that counsel was deficient in that choice of tactics. Accordingly, this Court finds that this claim is denied and dismissed.

(R. at 483-84.)

Petitioner is not entitled to federal habeas relief. Petitioner complains that counsel was ineffective because he did not pursue third-party guilt during the second trial. However, Petitioner also failed to present this evidence at the PCR hearing. Accordingly, the undersigned recommends granting summary judgment to Respondent on this ground for relief. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify.").

**VII. Ground Nine**

In Ground Nine, Petitioner complains that counsel was ineffective in failing to "argue time [or] place of death." Petitioner states,

> The date of death was unknown State said because she had not been seen since July 14, 2004 time was between July 14-16-2004 that was not proven place of death was not proven cause of death was unknown. Very important point here coroner on record page 327. In this particular case we ruled that the death was based on the remains found that there was traumatic injury and the remains were found burned. How could they prove traumatic injury with 13 oz of bones p. 329 Dr. Rathburn testified that he saw no culling, no shot marks no knife marks and was unable to determine cause of death. And no way to tell time of death. No a slat was proven nothing was proven all guess work no proof. . . .

24

(Dkt. No. 9.)

Respondent argues this ground for relief is barred because "Petitioner did not raise this issue at PCR, it was not addressed in the PCR Court's Order of Dismissal, and Petitioner did not raise this issue on appeal from the denial of PCR." (Dkt. No. 27 at 71.) Respondent is correct that this claim of ineffective assistance is not addressed in the PCR court's order. (See R. at 477-88.) The claim is therefore barred. See Montgomery v. Bodison, C.A. No. 6:09-778-HMH-WMC, 2010 WL 297667, at *4 (D.S.C. Jan 20, 2010) (although petitioner raised some claims in his petition, they were procedurally barred because the PCR court did not rule on them, and petitioner did not file a Rule 59(e) motion). Furthermore, to the extent Petitioner argues the evidence was insufficient to warrant a conviction, that claim has been addressed above in Ground One. Respondent is entitled to summary judgment on Ground Nine. See Brown v. State, 307 S.C. 465, 415 S.E.2d 811 (1992) (counsel's failure to move for a directed verdict "was not deficient performance which prejudiced petitioner," where forensic pathologist testified that "she could not determine a cause of death and although she found no evidence of foul play, she could not rule out strangulation," because the case was properly submitted to the jury where "strangulation was a possible cause of death and in light of the condition in which the body was found"); State v. Owens, 293 S.C.161, 166, 359 S.E.2d 275, 277-78 (1987) (finding evidence sufficient to establish venue in Horry County where "the victim was last seen at his residence in Horry County where there were found signs of a struggle," and "[t]he ransom money was demanded and delivered in Horry County").

**VIII. Ground Ten**

Petitioner asserts in Ground Ten that counsel was ineffective in failing to move for a change of venue. Petitioner states,

> The Anderson Da[ily] Mail ran ads in the Anderson paper about the facts of the case. Like 6 different times the Williamston ran ads 3 different times

Benton ran ads also just blowing the case up like every few days and the TV started station ran ads blowing the case up. The radio ran ads all so day after day they are no way I could get a fair trial in Anderson S.C. And counsel did not even ask for a change of venue. But here is really why I should got a change of venue my inv. for the public defender's office was Jimmy Penn. He came out and talk to me took notes about the case. We talk a few different times this is in 2004-2005 well I go to late Nov-2005 mistrial hung jury. Back to trial in Feb-2006. Same att Robert Gambrell now my old inv. Mr. Jimmy Penn is working as a investigator for the solicitor office. Don't they love it made my old inv-now he their inv any judge with any common sense would no even heard this case if I got a fair trial it snows in summertime. I did not have a chance I should have had a change of venue. To all of the untrue statements that was run on the TV, radio, newspapers, and the inv working both sides Hello I need so here thanks.

(Dkt. No. 9.)

Respondent contends this ground is barred because Petitioner did not raise it on appeal from the denial of PCR. (Dkt. No. 27 at 78.) Respondent is correct. See Longworth, 377 F.3d at 447-48; see also Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in Martinez. Instead, his claims fall under the general Coleman rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.").

Even if not barred, Petitioner is not entitled to habeas relief on Ground Ten. The PCR court addressed this claim as follows:

[T]his Court finds that the Applicant has . . . failed to meet his burden of proof. This Court finds Counsel's testimony that he felt the judge would have been unlikely to grant a change of venue after conducting such a thorough voir dire to ensure that the Applicant would receive a fair trial to be credible, while simultaneously finding the Applicant's testimony on this issue not to be credible. Accordingly, this Court finds that the Applicant can show neither ineffective assistance of counsel nor resulting prejudice. As such, this claim is denied and dismissed.

(R. at 485-86.) The state court's factual findings on credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption by clear and convincing evidence."

26

28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). He

has not done so, and Petitioner is not entitled to relief. See Campbell v. Bradshaw, 674 F.3d

578, 593-94 (6th Cir. 2012) (state court did not unreasonably apply Strickland on claim that

counsel was ineffective in failing to move for a change in venue where, *inter alia*, counsel

and the trial court "carefully questioned prospective jurors during *voir dire* concerning their

knowledge of the case from news reports and whether they could judge the case based

solely on the evidence that would be presented in court," and "[a] number of prospective

jurors indicated that they could not, and were excused"); see also Sample v. Clarke, Civ. A.

No. 1:13cv372 (CMH/TRJ), 2013 WL 3551937, at *5 (E.D. Va. July 9, 2013) (no habeas

relief on claim that counsel was ineffective in failing to move for a transfer of venue where

"only three prospective jurors indicated that they had heard of [the petitioner's] crimes, all

three said they would not be affected by what they learned, and none were struck on the

basis of their prior knowledge"); Fields v. Mathena, Civ. A. No. 7:11CV00001, 2011 WL

1897728, at *4 (W.D. Va. May 18, 2011) ("All of the jurors who indicated that they had heard

about the case stated, on an individual basis, that their prior knowledge would not affect

their ability to be fair and impartial. Based on the prospective jurors' responses, defense

counsel was satisfied that an impartial jury could be empaneled, and [the petitioner] has

failed to demonstrate that counsel's performance was deficient or that he suffered any

resulting prejudice.").

## IX. Ground Eleven

Petitioner asserts in Ground Eleven that counsel was ineffective in failing to strike two

jurors for cause. Petitioner states,

> We had two jurors that should have been excuse for cause. Juror 20 Pamela
> Burdette who knew to much about my case to not even know me. She stated
> that drugs will make us do things we would not normally do. Then before that
> was did you know either party answer no I do not. Could you be fair to both
> parties I think I can. That's not a yes or no answer I think I can. Nothing for

27

sure I think I can. I believe I can. The other juror new [sic] too much about my case should have been removed for cause.

(Dkt. No. 9.)

Respondent contends this ground is barred because Petitioner did not raise it on appeal from the denial of PCR. (Dkt. No. 27 at 82-83.) Respondent is correct. See Longworth, 377 F.3d at 447-48; see also Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in Martinez. Instead, his claims fall under the general Coleman rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.").

In any event, Petitioner is not entitled to relief on Ground Eleven. The PCR court addressed this claim as follows:

> [T]his Court again finds that the Applicant has failed to meet his burden of proof. This Court finds Counsel's testimony that the court conducted a thorough voir dire of the jury panel to be credible, as the testimony is supported by the record before this Court. This Court further notes that while the jurors in question may have initially given answers that gave cause for concern, they cured that concern to the court's satisfaction during voir dire and the court found they were fit to serve. Thus, this Court finds that the trial court would have been unlikely to rule favorably on Counsel's motion to strike after taking such measures to be sure of the jurors' fitness. As such, this Court finds that the Applicant can show neither ineffective assistance of counsel nor resulting prejudice. Accordingly, this claim is denied and dismissed.

(R. at 485.) The voir dire of Juror 20 proceeded in part as follows:

Q. Can you be fair to both the State and the Defendant?

A. I think I can.

Q. Do you have any bias or prejudice towards the State?

A. No, sir.

Q. Do you have any bias or prejudice towards the Defendant, Mr. Gambrell?

A. No, sir.

(R. at 42.)[3] The state court's rejection of Petitioner's ground for relief was not contrary to, or an unreasonable application of, clearly established federal law, nor did it result in an unreasonable determination of the facts. See Miller v. Francis, 269 F.3d 609, 618-19 (6th Cir. 2001) ("Many, if not most, jurors respond to questions about their ability to be fair and impartial in the same manner as [juror] Furrow-they assert their personal beliefs that they are unbiased, but leave it to the judge to make the final determination. In other words, venire members commonly couch their responses to questions concerning bias in terms of 'I think.' Therefore, the use of such language cannot necessarily be construed as equivocation. Taking the above statements in context with the other statements made by Furrow during voir dire, the trial court cannot be faulted for not disqualifying for cause a juror who consistently says that she thinks she can be fair."); Garrido-Valdez v. Poole, 384 F. Supp. 2d 591, 598-99 (W.D.N.Y. 2005) (state court did not unreasonably apply clearly established federal law where the petitioner presented no evidence of juror bias other than voir dire in holding that "although the two prospective jurors initially expressed views casting doubt on their ability to be impartial in this case, they each ultimately stated that they could be fair" (citing Patton v. Yount, 467 U.S. 1025, 1040 (1984))); Moore v. Johnson, Civ. A. No. 7:08CV00526, 2009 WL 2474101, at *11 (W.D. Va. Aug. 12, 2009) ("Counsel reasonably could have concluded, as did the court, that taken together, Howell's answers indicated, at most, a commonsense belief that drug intoxication impairs judgment, making a person more

---

[3]It is difficult to ascertain the identity of the other juror about which Petitioner complains; presumably he is referring to Juror 38. (See R. at 44.) Juror 38's testimony was not that he worked with the son of the Decedent; Juror 38 testified that he employed the son of Chris Vaughn of the Anderson County Sheriff's Office, and that Chris Vaughn had previously worked for Juror 38 at the restaurant. (See R. at 19, 22.) In addition, the voir dire of Juror 38 concluded as follows:

> THE COURT: Can you base your decision on the testimony you hear in the courtroom?
> PROSPECTIVE JUROR: I believe so, yes.
> THE COURT: Can you be fair to both the State and the Defendant?
> PROSPECTIVE JUROR: Yes.

(R. at 24.)

likely to commit a crime than he otherwise would, and not a bias against drug users as a group. Moore fails to offer any indication that additional questions of Howell would have revealed actual bias against drug users that would have prevented her from making an impartial decision after consideration of all the evidence. In the absence of proof that Howell was actually biased, the court must defer to counsel's strategic choices as to which venire members to strike with peremptory challenges."). The undersigned recommends granting summary judgment to Respondent on Ground Eleven.

## X. Ground Twelve

In Ground Twelve, Petitioner asserts counsel was ineffective in failing to move for an independent DNA expert. Petitioner states,

> Common sense my counsel did not even try to get a D.N.A. expert. So we really don't know what the D.N.A. was we did not have an expert to test it. An the bone could have been chicken bones or deer bones that we all know they found a deer bone that said was a right deer front leg. My counsel said at P.C.R. the state had a expert to do the testing so I feel good about that's ineffective assistance of counsel he left me out to dry with no D.N.A. expert. My att said he did not do it for trial tactics. How could that be a valid strategy when if he had a D.N.A. expert to do the testing what if it come back not a match I would not be lock up now. Poor excuse for att. . . .

(Dkt. No. 9.)

Once more, Respondent correctly contends that this ground is barred because Petitioner did not raise it on appeal from the denial of his PCR. See Longworth, 377 F.3d at 447-48; Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in *Martinez*. Instead, his claims fall under the general *Coleman* rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default."); see also Dkt. No. 27 at 84. In any event, Petitioner is not entitled to federal habeas relief. The PCR court addressed this claim as follows:

30

> [T]his Court finds that the Applicant has . . . failed to meet his burden of proof. This Court finds that Counsel's testimony that he did not move for additional testing as a matter of trial strategy in the hopes that he could use the state's failure to obtain more accurate testing to his advantage with the jury to be credible. Further, this Court finds that the strategic decision was a valid one. Our courts are understandably wary of second-guessing defense counsel's trial tactics. Where counsel articulates valid strategic reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 530 (1992). *See also* Dempsey v. State, 363 S.C. 365, 610 S.E.2d 812 (2005) *and* McLaughlin v. State, 352 S.C. 476, 575 S.E.2d 841 (2003). Here, Counsel articulated valid strategic reasons for his course of action. The Applicant has not shown that counsel was deficient in that choice of tactics. As such, this Court finds that the Applicant cannot show either ineffective assistance of counsel or resulting prejudice. Accordingly, this claim is denied and dismissed.

(R. at 486.)

As noted above, factual findings on credibility are presumed to be correct, and Petitioner has the "burden of rebutting the presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not done so. Furthermore, as noted by the state court, trial counsel articulated a strategic reason for not requesting further DNA testing. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."); Anaya v. Lemaster, 202 F.3d 281, at *1 (10th Cir. 1999) (unpublished table decision) (no habeas relief on claim of ineffective assistance of counsel for failing to develop a diminished capacity defense where the state court "determined that defense counsel made a tactical choice not to pursue such an instruction because the evidence was weak and the defense expert concluded that Mr. Anaya's intoxication did not affect his judgment"); Curry v. Warden, No. 6:07-2933-HFF-WMC, 2008 WL 3887648, at *11 (D.S.C. Aug. 21, 2008) (finding the petitioner was not entitled to habeas relief on claim

of ineffective assistance of counsel for failure to object to prosecutor's statement in closing argument where, *inter alia*, counsel testified as to his strategic reasons for not objecting).

Finally, Petitioner did not present any DNA evidence at his PCR hearing, so the state court's rejection of Ground Twelve was not contrary to, or an unreasonable application of, clearly established federal law, nor did it result in an unreasonable determination of the facts. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); see also Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify."). Respondent is entitled to summary judgment on Ground Twelve.

## XI. Ground Thirteen

In Petitioner's last ground for relief–Ground Thirteen–he asserts that counsel was ineffective due to a conflict of interest. (See Dkt. No. 9.) Petitioner does not appear to assert his counsel labored under a conflict of interest but that a conflict existed because an investigator who worked on Petitioner's case during the first trial was employed by the solicitor's office during Petitioner's second trial. Petitioner states,

> This issue was amended to the state court. Counsel was ineffective for allowing my case to go to court here without even trying to stop it. And let the judge make that decision that's what we have judges for I thought but my lawyer thought he was the judge. I had two trials first trial hung jury. My inv. Mr. Jimmy Penn was my inv on my case 2004-2005 go to court hung jury. Go back to court 2006 Feb . . . now that same Jimmy Penn my inv on this same

case in 2004-2005 is now working for solicitor's office as their inv. I did not
have a chance, my atty said he new [sic] Jimmy he was a good o boy. If that's
not a conflict I don't know what is.

(Dkt. No. 9.)

As with most of Petitioner's other grounds for relief, Respondent asserts Ground

Thirteen is barred because the issue was not raised on appeal from the denial of PCR. (Dkt.

No. 27 at 86.) Again, Respondent is correct. See Longworth, 377 F.3d at447-48; see also

Johnson v. Warden of Broad River Corr. Inst., No. 12-7270, 2013 WL 856731 (4th Cir. Mar.

8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of appellate postconviction

counsel, his allegations do not constitute cause for his failure to exhaust under the limited

exception in *Martinez*. Instead, his claims fall under the general *Coleman* rule that ineffective

assistance of postconviction counsel cannot constitute cause for procedural default.").

Regardless, Petitioner is not entitled to federal habeas relief. The PCR court

addressed this claim as follows:

[T]his Court . . . finds that the Applicant has failed to meet his burden of proof.
This Court finds that Counsel's testimony that Investigator Penn was not
involved in the Applicant's case after he became employed to be credible.
Further, this Court finds that Applicant's testimony that there was a conflict is
not credible, as the Applicant introduced no evidence to support his claim. As
such, this Court finds that the Applicant cannot prove ineffective assistance
of counsel or resulting prejudice. Accordingly, this claim is denied and
dismissed.

(R. at 484.) Counsel testified at the PCR hearing that the investigator was "probably one of

the most honest people [counsel] know[s]," and the investigator told counsel on several

occasions that he "was not going to work on any of the cases in the Solicitor's Office that

he had" in the Public Defender's Office. (R. at 459.) Counsel further testified that the

investigator did not testify at Petitioner's trial and that to counsel's knowledge, the

investigator "didn't touch" Petitioner's case while at the Solicitor's Office. (Id.) The state

court found counsel's testimony to be credible, and such a credibility determination is

33

presumed to be correct; Petitioner has the burden of rebutting such determination by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); see also Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). Petitioner has not met his burden. The undersigned therefore recommends granting summary judgment to Respondent on Ground Thirteen.

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 26) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is also RECOMMENDED that a certificate of appealability be denied.[4]

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

December 9, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[4]A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

34

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).